UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:18-CR-52-TBR

UNITED STATES OF AMERICA                                           PLAINTIFF

v.

RANDALL WAYNE SNOW                                               DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Randall Snow's Motion for Compassionate Release in Light of COVID-19. [DN 30]. The Government has responded. [DN 32]. This matter is ripe for adjudication. For the reasons stated herein, Defendant's Motion for Compassionate Release in Light of COVID-19, [DN 30], is DENIED.

**BACKGROUND**

On November 15, 2019, Defendant was sentenced to a 120-month term of imprisonment and five years supervised release for trafficking methamphetamine in excess of fifty (50) grams. [DN 28]. Currently, Defendant has served approximately 14 months of his 120-month sentence. In the instant Motion, Defendant argues that the presence of COVID-19 in prisons and the inability for inmates to properly socially distance constitute "extraordinary and compelling reasons" under the First Step Act that warrant his release. [DN 30]. Defendant does not allege that he has any pre-existing or underlying medical conditions that would place him at a higher risk of severe illness from COVID-19. [*Id.*]

## LEGAL STANDARD

"The court may not modify a term of imprisonment once it has been imposed except that-

   (1) in any case—

   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

   (i) extraordinary and compelling reasons warrant such a reduction"

18 U.S.C.A. § 3582(c)(1)(A). "Under the [First Step Act], courts are now permitted to 'consider motions by defendants for compassionate release without a motion' by the BOP Director so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses." *United States v. Logan*, 2020 WL 730879, at *1 (W.D. Ky. Feb. 13, 2020).

Before granting a compassionate release motion, a district court shall engage in a "three-step inquiry:" the court must "find" that (1) extraordinary and compelling reasons warrant a sentence reduction; (2) ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) consider all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)); *United States v. Elias*, No. 20-3654, 2021 WL 50169, at *1 (6th Cir. Jan. 6, 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. Nov. 20, 2020)).

Congress provided no statutory definition of "extraordinary and compelling reasons" in section 3582(c)(1)(A). *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Instead,

Congress directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *1 (E.D. Ky. Dec. 29, 2020) (quoting 28 U.S.C. § 994(t)). Those descriptions are found in § 1B1.13 of the United States Sentencing Guidelines (policy statement) and the application notes to that section.

Notably, however, the United States Court of Appeals for the Sixth Circuit recently concluded that because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 . . . the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)). Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, U.S. Sentencing Guideline § 1B1.13 is no longer an "applicable" policy statement in cases where an incarcerated person, as opposed to the Director of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry" and have "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109, 1111.

Despite the Sixth Circuit's holding in *Jones*, this Court agrees with the United States District Court for the Eastern District of Kentucky in stating that "[w]hile the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding, it provides a useful starting point to determine whether extraordinary and compelling reasons exist." *United States v. Muncy*, No. 6: 07-090-DCR, 2020 WL 7774903, at *1 (E.D. Ky. Dec. 30, 2020). This policy statement

describes four categories of extraordinary and compelling reasons. The first three relate to an inmate's serious medical conditions, age, and status as a caregiver. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). Specific medical conditions of a defendant constituting extraordinary and compelling reasons for a reduction in terms of imprisonment may include "terminal illness," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process." *Id.* The application note to U.S.S.G. § 1B1.13 further provides that the age of a defendant may be a necessary and compelling reason for a reduction in terms of imprisonment when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* The last category is a catch-all provision titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

## DISCUSSION

### I. Exhaustion of Administrative Remedies

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, --- F.Supp.3d. ----, No. 1:13-CR-186-6, 2019 WL 2716505, at *4 (M.D.N.C. June 28, 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses."

*United States v. Marshall*, No. 3:19-CR-00004-JHM, 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

However, in the instant case, Snow was not yet in the custody of the Bureau of Prisons when he filed his motion for compassionate release with the Court in August 2020. [DN 30 at 120; DN 32 at 128]. Instead, he was housed in the Grayson County Detention Center awaiting transfer to a BOP facility. [DN 32 at 128]. Thus, Snow had no warden to petition for compassionate release even though he was serving a federal sentence. *See United States v. Coslow*, No. 3:16-CR-136-CRS, 2020 WL 2499592, at *2 (W.D. Ky. May 14, 2020). Beginning in November 2020, the record indicates that Snow has been transferred to a BOP facility and is currently housed at USP Atlanta. Yet, Snow has not filed any supplemental motions with the Court since being transferred to USP Atlanta.

In Snow's Motion, he asks the Court to consider his Motion directly because he is not in a BOP facility and the typical administrative procedures for submitting a request for compassionate release are not available to him. [DN 30]. In their response, the Government does not raise any objection to the exhaustion requirement and concedes that at the time Snow filed his Motion, he had not been transferred to a BOP facility and "therefore has no administrative remedies to exhaust." [DN 32 at 129, n. 3]. At the time Snow filed this motion, he was not in the custody of the BOP, therefore the BOP has not brought a motion on Snow's behalf to reduce his term of imprisonment, and it cannot do so, because there is no dispute that Snow was not BOP custody. *Coslow*, 2020 WL 2499592, at *2. Since under these circumstances, Snow could not exhaust any administrative rights to appeal inaction by the BOP, he has not filed any supplemental motions since being transferred to USP Atlanta, and the Government has not objected, the Court finds that the administrative process is complete. At the time of filing, Snow had done all he could do to

exhaust his administrative remedies. *See Id; United States v. Brown*, No. 3:17-CR-37-TAV-DCP-5, 2020 WL 4496507, at *3 (E.D. Tenn. Aug. 4, 2020). Thus, the Court may consider the merits of Snow's request.

## II. Extraordinary and Compelling Reasons

While the Court has authority to consider Snow's Motion on the merits, Snow fails to establish extraordinary and compelling reasons warranting his release. Where, as here, an incarcerated person files a motion for compassionate release directly, the district judge may skip step two of the § 3582(c)(1)(A) inquiry and has full discretion to define and determine whether an "extraordinary and compelling" reasons exists on his own initiative, without consulting the policy statement § 1B1.13. *Elias*, No. 20-3654, 2021 WL 50169, at *1 (citing *Jones*, 980 F.3d at 1111). Here, the Court finds that the general fear of contracting COVID-19 while incarcerated does not constitute such a reason.

In support of his motion, Snow states that he is remorseful for his crimes, that he can be a productive member of society, and that he is in fear of contracting COVID-19 because prisons "have become 'hot spots' [for] the virus due to the lack of our ability to social distance, the recycled air ventilation system, and staff come into contact with public places daily and come into work around inmates.' [DN 30 at 121–22]. In response, the Government argues that Snow has not indicated that he has been exposed or contracted the virus. [DN 32 at 130]. Moreover, Snow "does not allege that he has any pre-existing or underlying medical conditions that would place him at a higher risk than others for contracting [COVID-19] or having complications. [Snow] has cited nothing other than a general fear of COVID-19 and therefore fails to establish an extraordinary and compelling reason for his release." [*Id.*] In addition, the Government states that "considering

the reckless nature of his crimes, it would be an intolerable justice to release him after [14 months] incarceration." [*Id.* at 131].

Snow is currently housed at USP Atlanta. As of January 25, 2021, USP Atlanta has 1,970 total inmates (1,870 at USP and FDC and 100 at the Camp).[1] There are fifteen (15) inmates and fourteen (14) staff members with confirmed active cases of COVID-19.[2] Two inmates have died and 102 have recovered.[3] Snow has yet to test positive for the coronavirus. [*See* DN 30; DN 32 at 130]. Even though there are positive cases at USP Atlanta, there is no uncontrolled outbreak.

Snow did not contend that he has any pre-existing or underlying medical conditions, and there is nothing in the record showing that he is suffering or has ever suffered from any medical condition that would put him at risk of severe illness from COVID-19. Neither the Government nor Snow provided any medical records for the Court to review. The Court recognizes the severity of the novel coronavirus and its increasing risk in the United States. There is no doubt that the dangers of COVID-19 are exacerbated by the prison environment. *United States v. Herring*, No. 6:14-cr-00008-GFVT-CJS, 2020 WL 6886256, at *4 (E.D. Ky. Nov. 24, 2020). However, the Court cannot find that the existence of COVID-19 or Snow's general fear of the virus is enough to warrant release under § 3582(c)(1)(A). Accordingly, because Snow does not allege that he suffers from any medical condition or other COVID-19 risk factor and USP Atlanta has few active COVID-19 cases, the Court finds that Snow has failed to establish extraordinary and compelling reasons that warrant his release.

---

[1] https://www.bop.gov/locations/institutions/atl/ (accessed by the Court on Jan. 25, 2021).
[2] https://www.bop.gov/coronavirus/ (accessed by the Court on Jan. 25, 2021).
[3] *See id.*

### III. 18 U.S.C. § 3553(a) Factors

Considering the totality of Snow's circumstances, Snow's compassionate release under 18 U.S.C. § 3582(c)(1)(A) is not warranted. Nonetheless, even though the Court has found Snow is not entitled to compassionate release, the Court will weigh the sentencing factors in § 3553(a) to determine whether Snow's sentence should be reduced. *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D.N.M. 2019). Pursuant to § 3553(a), a court imposing a sentence shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
>
> (5) any pertinent policy statement . . . by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Here, Snow's conviction resulted from an incident on May 22, 2018, where detectives, aware that Snow had warrants for his arrest, observed Snow operating a vehicle and attempted to make a traffic stop. Snow accelerated at a high rate of speed and fled from detectives. [DN 32 at 127]. Operating the vehicle in an erratic manner, Snow ran off the roadway, crossing over a ditch and into a residential yard where he was eventually apprehended. Snow admitted to driving under the influence and detectives located 172.36 grams of methamphetamine in his vehicle. [*Id.*] Snow posted bond and was released on May 24, 2018. On November 13, 2018, a one-count Indictment was filed in this Court, formally charging Snow with Possession with Intent to Distribute Methamphetamine, in Excess of 50 grams. [*Id.*] A federal arrest warrant was issued pursuant to the Indictment. On January 23, 2019, detectives observed Snow operating a vehicle and knew he had an outstanding federal arrest warrant. Once again, when Snow observed the detectives, he fled at a high rate of speed and ran a stop sign, nearly striking two vehicles. [*Id.*] Snow crashed the vehicle into a telephone pole, injuring himself and a passenger. Snow was then taken into custody.

It is clear from these facts that Snow's criminal history of drug trafficking and fleeing from the police support the conclusion that Snow's "history and characteristics" and "the nature and circumstances" of his crimes weigh against relief. The Court believes that granting Snow compassionate release would not comply with the § 3553(a) factors, especially considering the reckless nature of his crimes.  Moreover, Snow has only served approximately 14 months of his 120-month sentence. Accordingly, the Court finds that reducing Snow's sentence would fail to afford adequate deterrence to criminal conduct, provide just punishment, or promote respect for the law. Granting him compassionate

release when he has served only 14 months of a ten-year sentence would also lead to unwarranted sentence disparities and would be unjust in light of the serious and reckless nature of his crimes. Therefore, Snow's Motion for Compassionate Release in Light of COVID-19, [DN 30], must be **DENIED.**

## CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that Snow's Motion for Compassionate Release in Light of COVID-19, [DN 30], is **DENIED.**

**IT IS SO ORDERED.**

Thomas B. Russell, Senior Judge
United States District Court

January 25, 2021

CC: **Randall Wayne Snow**
19654-033
ATLANTA
U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 150160
ATLANTA, GA 30315
PRO SE