# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

UNITED STATES OF AMERICA

v.   No. 5:18-cr-52-BJB

RANDALL WAYNE SNOW

\* \* \* \* \*

## OPINION & ORDER DENYING REQUEST FOR EARLY RELEASE

Randall Snow is serving a 120-month sentence for possessing methamphetamine with the intent to distribute it. Citing his family circumstances and rehabilitation, Snow (again) seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). Second Motion for Compassionate Release (DN 35) at 1–2.[1] Snow has not demonstrated that he exhausted his administrative remedies in accordance with § 3582(c)(1)(A). Nor has he shown an extraordinary and compelling basis for early release under the factors made relevant by Congress. *See* §§ 3553(a), 3582(c)(1)(A)(i). For both of these reasons, the Court denies Snow's motion for a sentence reduction.

## I.

A federal grand jury indicted Snow in November 2018. Indictment (DN 1) at 1. In July 2019, Snow pled guilty to one count of knowingly and intentionally possessing, with intent to distribute, 50 grams or more of methamphetamine. Presentence Investigation Report (DN 26) ¶¶ 1–4. The advisory Sentencing Guidelines recommend a range of 151–188 month's imprisonment. ¶ 80. The district court judge sentenced Snow to 120 months' imprisonment—the mandatory-minimum sentence under the statute. Judgment and Commitment Order (DN 28) at 3; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii).[2] Snow is projected to be released in September 2027

---

[1] This is not Snow's first time seeking compassionate release. He sought the same relief in August 2020, citing Covid concerns. DN 30 at 2–4. But the district judge then assigned to his case denied his motion because "the existence of COVID-19 or Snow's general fear of the virus … failed to establish extraordinary and compelling reasons" for release. Order Denying Compassionate Release (DN 34) at 7.

[2] Since the parties filed their briefs, the Sixth Circuit has observed that "§ 3582(c)(1)(A)(i) … could never empower a court to reduce a sentence below the statutory minimum portion of that sentence." *United States v. Bricker*, 135 F.4th 427, 447 (6th Cir. 2025) (en banc petition stayed, *see* No. 24-3286, DN 69). Snow appears to be serving the mandatory minimum sentence for his conviction. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii). So this Court at least arguably could not grant his motion even if he satisfied the statutory requirements. The parties don't address this issue, however.

1

and will be eligible for home detention in March 2027. DOJ Assignment History Report (DN 35-4) at 6.[3]

Snow argues that compassionate release is warranted due to his family circumstances and his rehabilitation. Second Motion at 2–4. The Government opposes his motion on two grounds: (1) Snow hasn't indicated that he's exhausted the administrative remedies and (2) his family circumstances and rehabilitation are neither extraordinary nor compelling. *See* Response (DN 37) at 2, 4.

**II.**

As the Sixth Circuit recently recapitulated, a "judgment of conviction that includes … a sentence [of imprisonment] constitutes a final judgment." *United States v. Bricker*, 135 F.4th 427, 432 (6th Cir. 2025) (quoting 18 U.S.C. § 3582(b)). "[B]ut for certain exceptions," the Court of Appeals explained, a sentencing "court may not modify a term of imprisonment once it has been imposed." *Id.* (quoting § 3582(c)).

One of those limited exceptions is a motion for compassionate release under 18 U.S.C. § 3582. Before 2018, only the Bureau of Prisons could file a motion for compassionate release. *See United States v. Taylor*, No. 20-3642, 2020 WL 7383648, at *1 (6th Cir. Nov. 9, 2020). Congress has since amended § 3582(c) to permit a federal inmate to request compassionate release, but he must first ask his facility's warden to do so on his behalf. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (citing § 3582(c)(1)(A)). Only after the warden denies the request—or else does not reply within 30 days of receiving the request—may the inmate seek release on his own behalf. *Id.*

Assuming the inmate appropriately exhausted his remedies within the facility, courts evaluate compassionate-release motions according to a "three-step inquiry." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (citation omitted). Release is appropriate only if (1) a prisoner shows that "'extraordinary and compelling' reasons warrant the reduction" in sentence, (2) the court confirms that "any sentence reduction 'is consistent with applicable policy statements issued by the Sentencing Commission,'" and (3) the prisoner shows that the release is justified under the § 3553(a) factors that govern federal sentencing decisions. *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (quoting § 3582(c)(1)(A)(i)) (collecting cases). Those factors include the defendant's "history and characteristics," the "nature and circumstances of the offense," and the need to protect the public, deter criminal conduct, promote respect for the law, and avoid unwarranted sentencing disparities. § 3553(a). A compassionate-release motion fails if any of these three prerequisites is lacking. *Elias*, 984 F.3d at 519.

The Sentencing Commission has denoted six categories of extraordinary and compelling reasons that may support compassionate release. Those categories are (1)

---

[3] In his Motion to Request Status Update (DN 39 at 1), filed after his Second Motion for Compassionate Release, Snow states that his projected release date has changed to September 2026.

medical circumstances, (2) age, (3) family circumstances, (4) abuse suffered in custody involving a "sexual act" or "serious bodily injury," (5) "other reasons" similar to those in the first four categories, and (6) an "unusually long sentence." *See* U.S.S.G. § 1B1.13(b). The Sixth Circuit (speaking before the Commission issued this policy statement) declared such circumstances "most unusual" and "far from common." *McCall*, 56 F.4th at 1055 (citation omitted). And in any event, district judges retain considerable discretion to determine whether a defendant's reasons are extraordinary and compelling. *See United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

### A. Snow fails to demonstrate that he has exhausted his administrative remedies.

As the Government correctly points out, nowhere in Snow's motion does he indicate that he's asked his facility's warden to seek compassionate release. Response at 2. And Snow does not dispute this assertion in his Reply. Compassionate-release exhaustion functions as a "mandatory claim-processing rul[e]" that courts must enforce "when 'properly invoked.'" *See Alam*, 960 F.3d at 833–34 (quoting *Hamer v. Neighborhood Housing Services of Chicago*, 583 U.S. 17, 20 (2017)). Because Snow has not demonstrated that he exhausted his administrative remedies, the Court denies his motion. *See, e.g.*, *United States v. Alam*, 453 F. Supp. 3d 1041, 1043 (E.D. Mich. 2020) (denying compassionate release because defendant "has not provided any indication that he has exhausted all of his administrative rights to appeal the BOP's failure to bring a motion on his behalf."), *aff'd* 960 F.3d 831 (6th Cir. 2020).

### B. No Extraordinary and Compelling Reason Supports Snow's Early Release

Even if Snow had satisfied the exhaustion requirement, however, his motion would still fail, as he hasn't demonstrated an extraordinary and compelling reason to reduce his sentence. *See* § 3553(a). Snow offers his family circumstances and rehabilitation, but neither merits a reduced sentence.

#### 1. Family Circumstances

Snow claims to be the only available caregiver for both his ailing grandmother (Carolyn) and his minor child (Bentley), who is currently Carolyn's dependent. Second Motion at 2–3; Reply (DN 38) at 2. While the Court sympathizes with Snow's situation, his family circumstances do not merit early release.

Family circumstances may be extraordinary or compelling when they resemble one of the four situations described by the Sentencing Commission's policy statement. *See* § 1B1.13(b)(3)(A)–(D). Two of those family situations are relevant to this motion: "[t]he death or incapacitation of the caregiver of the defendant's minor child," § 1B1.13(b)(3)(A), or "[t]he defendant establishes" that "similar" circumstances exist for another family member, such as a "grandparent," § 1B1.13(b)(3)(D).

"Incapacitation" for the purposes of a compassionate-release motion means "the family member caregiver suffered a severe injury (e.g., auto accident) or suffers

3

from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." Federal Bureau of Prisons, *Program Statement* 5050.50, *Compassionate Release/Reduction in Sentence*, at 7 (2019); *see also United States v. Montgomery*, No. 5:17-cr-82, 2020 WL 6491653, at *2 (E.D. Ky. Nov. 4, 2020) (adopting this definition).

Additionally, for a caregiver's incapacitation to be extraordinary and compelling, the defendant must show that he is the only available or suitable alternative caregiver. *United States v. Mathews*, No. 2:19-cr-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023) ("Courts have placed the burden on the defendant to prove that other potential caregivers are not available or suitable.") (collecting cases).[4] The defendant must clear a high bar to show that he is the only available caregiver; other potential caregivers can be significantly burdened and still be available. *See, e.g.*, *United States v. Marshall*, No. 3:16-cr-4, 2020 WL 114437, at *3 (W.D. Ky. Jan. 9, 2020) (caregivers who fear losing their employment due to caregiving time commitment are nevertheless available). Some courts even require that all other caregivers must themselves be "incapacitated" for the defendant to be the only available caregiver. *See, e.g*, *United States v. Delgado*, No. 3:15-cr-246, 2023 WL 4552890, at *2 (M.D. Pa. July 14, 2023) ("[A] defendant typically must establish that all other potential caregivers for their minor child are incapacitated."); *United States v. Thornton*, No. 2:18-cr-167-1, 2020 WL 4368155, at *5 n.10 (W.D. Pa. July 29, 2020) (caregiver who lost her job and home while caring for her minor son with cancer was still available because her circumstances did not amount to "incapacitation"). If a family member is named on the record, and there is no evidence that he or she is unavailable, courts may find that family member to be an available caregiver. *See, e.g.*, *United States v. Cruz-Rivera*, No. 11-cr-43, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020) (defendant's claim to be sole available caregiver failed because the record showed two relatives lived near his minor child but lacked further details).

Snow's grandmother, Carolyn, adopted Snow's minor son Bentley in 2020 and is currently his caregiver. Judgment of Adoption (DN 35-1); Second Motion at 2. According to Snow, Carolyn has had several strokes, has undergone open-heart surgery, and currently suffers from dementia and frequent falls. Second Motion at 2. Carolyn's doctor has confirmed that she has a history of TIA (a stroke-like brain injury), and she currently suffers from several neurological disorders, frequent falls, and coronary artery disease. Letter of Dr. Fischer (DN 35-2).

Snow's aunt, Susan, helps care for Bentley and Carolyn. Snow's father, Ricky, previously helped her care for them but recently passed away. Second Motion at 2–3. Now, Susan struggles to manage their care on her own. *Id.*; Reply at 3. Susan writes (in a letter submitted to the Court) that she is not physically strong enough to

---

[4] Snow incorrectly asserts that the Government bears the burden of showing that he is not the only available caregiver. Reply (DN 38) at 3. Defendants bear the burden. *See United States v. Mathews*, No. 2:19-cr-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023); *see also* § 1B1.13(b)(3)(D) ("The *defendant* establishes that circumstances similar to those listed … exist[.]") (emphasis added).

assist Carolyn with day-to-day activities or to lift Carolyn when she falls. DN 35-3 at 2. Susan claims that it sometimes takes more than an hour for her to lift Carolyn when she falls. *Id.* As far as Bentley is concerned, Susan says only that he is "at a very critical age," he "needs a man in his life that is present," and she "need[s] someone to help" care for him. *Id.* at 2–3.

Although the Court sympathizes with Snow's family situation, these circumstances do not merit early release. A defendant's absence from family members is baked into the punishment of incarceration and is therefore generally not extraordinary. *See United States v. Putty*, No. 5:19-cr-2, 2024 WL 3066913, at *3 (W.D. Ky. June 20, 2024) ("Unfortunately, 'incarcerated people … commonly leave innocent partners, parents, and children to fend for themselves as a result of criminal conduct.'") (quotation omitted). In fact, "the death [or incapacitation] of a minor child's caregiver only amounts to an 'extraordinary and compelling reason' when the defendant has provided documentation that they are the *only available caregiver* for the child." *United States v. Lemon*, No. 4:16-cr-239, 2021 WL 1060142, at *2 (N.D. Ohio Mar. 18, 2021) (emphasis added) (citation omitted). For the reasons below, Snow has not shown that the death of his father or incapacitation of his grandmother renders him the only available caregiver for either his grandmother or his son.

Carolyn, Bentley's current caregiver, may well be unable to care for Bentley due to her illnesses. But even if Carolyn is incapacitated, the evidence shows that Susan currently helps care for him. Although it may well be difficult for Susan to care for a teenage boy by herself, such difficulties do not render her "unavailable" as a caregiver within the relatively strict meaning courts and the Commission have applied to this term. *See Delgado*, 2023 WL 4552890, at *2. And even if Susan were unable to care for Bentley, the record doesn't rule out (as the caselaw requires, *see Mathews*, 2023 WL 5924411, at *3 that Snow's mother (Laura) and aunt (Renee) cannot serve as caregivers. *See* Letters of Support (DN 35-6) at 2–3. The burdens that a defendant's incarceration imposes on his own family members are "unfortunate, but not unusual." *United States v. Cole*, No. 18-cr-20237, 2021 WL 194194, at *3 (E.D. Mich. Jan. 20, 2021). Thus, at least three caregivers are apparently available to Bentley.

As to Carolyn's caregiver, Snow cannot prevail under § 1B1.13(b)(3)(D)'s "similar circumstances for another family member" provision despite Susan's difficulties in caring for Carolyn. Susan, Carolyn's caregiver, is not incapacitated because she has not suffered a severe injury or illness that renders her incapable of caring for Carolyn. *See Montgomery*, 2020 WL 6491653, at *2. While it is unfortunate that she struggles to perform the physical labor that sometimes accompanies caring for the elderly, such struggles do not meet the legal definition of incapacity. *Id.*

Even if Susan were incapacitated, however, Snow has not demonstrated that he is the only other available caregiver for Carolyn. Again, Laura and Renee give no indication that they are unable to care for Carolyn. *See* Letters of Support at 2–3. Although Snow says that his other family members "argued they did not want to become someone's caregiver," Reply at 3, this does not render them unavailable, as

5

discussed above. *See Delgado*, 2023 WL 4552890, at *2. Similarly, Snow is incorrect to say that "simply someone [being] named in a [PSR]" cannot defeat his claim to be the only available caregiver. Reply at 3. The record of two other potential caregivers can, and does, defeat Snow's claim to be the only available caregiver. *See, e.g.*, *Cruz-Rivera*, 2020 WL 5993352, at *7; *Lemon*, 2021 WL 1060142, at *2.

Because Snow has not demonstrated that the death or incapacitation of other caregivers renders him the only available caregiver for either Bentley or Carolyn, he has not demonstrated the extraordinary and compelling family circumstances necessary to prevail on his motion for compassionate release.

### 2. Rehabilitation & Remaining § 3553(a) Factors

Snow lists several rehabilitative accomplishments, which he believes support his motion. These include attending counseling, completing a drug-education program, participating in a faith-based personal development program, and holding employment in each of his correctional facilities. Second Motion at 3–4. His risk-recidivism level and security classification are both low. DOJ Assignment History Report at 4–5; *see also* Second Motion at 4. The Government's response does not dispute these factual assertions, so the Court takes them as true.

The Court commends Snow for his efforts at reform. But as Snow himself acknowledges, rehabilitation is not an extraordinary and compelling reason in its own right. Second Motion at 3 ("[R]ehabilitation is not a stand-alone extraordinary and compelling reason, but may be considered along with other circumstances.") (citation omitted); *see* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Rather, rehabilitation is considered in conjunction with the § 3553(a) factors. *See United States v. Daugherty*, No. 5:18-cr-19, 2024 WL 4457842, at *4 (W.D. Ky. Oct. 10, 2024) (weighing rehabilitative efforts with § 3553(a) factors).

Even accepting his rehabilitation, a sentence reduction would not be consistent with the sentencing factors established by Congress. *See* § 3582(c)(1)(A). These factors include the "history and characteristics of the defendant," the "nature and circumstances of the offense," and the need "to promote respect for the law," "reflect the seriousness of the offense," "provide just punishment," "[deter] criminal conduct," and "avoid unwarranted sentenc[ing] disparities. § 3553(a)(2).

Snow's criminal history weighs against granting his motion. Snow pled guilty in 2011 to committing domestic violence, PSR ¶ 48, and six months later to assault, ¶ 49.

The nature of the offense that led to this conviction and sentence likewise counsels against a sentence reduction. Snow was convicted of possession with intent to distribute greater than fifty grams of methamphetamine— "a serious offense that, in itself, poses a danger to the community," *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010). That danger weighs against a sentence reduction under § 3553(a). *Id.*; *United States v. Alford*, No. 5:14-cr-77, 2021 WL 1511643, at *3 (E.D. Ky. Apr. 9,

2021) (denying compassionate release in part because the danger of drug trafficking militated against sentence reduction).

Finally, Snow's 120-month sentence provides a just punishment that reflects the seriousness of his offense. *Cf. Daugherty*, 2024 WL 4457842, at *5 (a 100-month sentence for aiding and abetting methamphetamine possession with intent to distribute "reflects the seriousness of [the] offense"). Indeed, reducing Snow's sentence could create unwarranted sentencing disparities with other defendants serving the same mandatory minimum, especially because Snow's sentence is significantly below the 151-month guideline range for his crime. *See, e.g., United States v. Haygood*, No. 2:19-cr-144, 2022 WL 1073573, at *3 (E.D. Tenn. Apr. 8, 2022) (compassionate release of a sentence for conspiracy to distribute more than 50 grams of methamphetamine that was below the Guideline range could "create an unwarranted disparity in sentencing").[5]

## ORDER

The Court denies Snow's second motion for compassionate release (DN 35).[6]

---

[5] Moreover, this Court arguably cannot reduce Snow's sentence below the mandatory minimum regardless of the § 3553(a) factors. *See Bricker*, 135 F.4th at 447, cited above at 1 n.2.

[6] On April 11, 2025, Snow filed a motion requesting a status update. DN 39. He reported his progress in a drug-treatment program, his projected release date, and his recidivism classification. *Id.* at 1. He also noted that the Court had not yet ruled on his pending motion for sentence reduction. *Id.* Because this order addresses that motion, the Court grants Snow's motion for a status update (DN 39).